UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------×
JEANNICE TSE,

                *Plaintiff,*

       v.

CAPITAL ONE FINANCIAL CORPORATION,
ELIZABETH KHATRI, and SIMON LINDENMANN,

              *Defendants.*
-----------------------------------------------------------------------×

**20-CV-09347**

**<u>COMPLAINT</u>**

**JURY TRIAL DEMANDED**

    Plaintiff, Jeannice Tse, by her attorneys, Young & Ma LLP, complains of Defendants as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.    Plaintiff Jeannice Tse ("Plaintiff" or "Ms. Tse") seeks damages and costs against Defendants Capital One Financial Corporation ("Capital One" or the "Bank"), Elizabeth Khatri ("Khatri"), and Simon Lindenmann ("Lindenmann")(collectively, "Defendants") for discriminating and retaliating against her based on race, sex, pregnancy, familial status, caregiver status, and disability and perpetuating pervasive race/sex/pregnancy/familial status stereotypes, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.*; the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101 *et seq.;* the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2.    Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male colleagues, comparative female co-workers who are not pregnant, comparative White colleagues, as well as comparative colleagues that did not require reasonable

accommodations to perform their roles, which provide similar or the same work and have similar or the same credentials and experience as Plaintiff, and for retaliating against her for exercising her rights in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d) *et seq.*, and N.Y. Labor Law § 194.

3.      Finally, Plaintiff seeks damages and costs against Defendants for unlawful discrimination and retaliation under the Family and Medical Leave Act ("FMLA"), 29 US.C. §2601 *et seq.* and New York Paid Family Leave Law, 12 N.Y.C.R.R. § 355 *et seq.*

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII, the ADA, the EPA, and the FMLA.

5.      Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about August 10, 2020.

6.      Plaintiff requested a right to sue from the EEOC on or about August 13, 2020.  The EEOC issued the right to sue shortly on or about August 19, 2020.

7.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, New York Paid Family Leave Law, and New York Labor Law claims as they are so related to the Title VII, ADA, EPA, and FMLA claims that they form part of the same case or controversy.

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

9.      Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

10.      Upon information and belief, at all times relevant hereto, Defendant Capital One Financial Corporation was and is a foreign business corporation organized under the laws of the State of Delaware, doing business in New York City with offices located at 299 Park Avenue, New York, NY 10171.

11.      Upon information and belief, Defendant Elizabeth Khatri is an individual residing in New York and formerly worked in the New York City office of the Company.

12.      Upon information and belief, Defendant Simon Lindenmann is an individual residing in New Jersey and works in the New York City office of the Company.

## STATEMENT OF MATERIAL FACTS

13.      Ms. Tse is a Singapore citizen and U.S. Green Card holder of Chinese ethnicity.  She graduated college from Singapore's Nanyang Technological University in the Nanyang Business School with a Bachelor's in Accountancy (first class honors) and then obtained an MBA at the University of Chicago Booth School of Business.  While in Singapore, Ms. Tse worked for Citigroup and ABN Amro.  In June 2012, she relocated to New York to continue to work for Banco Santander, and then joined McKinsey & Co in 2014. For a brief period, she worked for a McKinsey alumnus at the New School before lateralling back to strategy and finance, where she has long term experience, with Capital One.

14.      Defendant Capital One Financial Corporation is an American bank holding company specializing in credit cards, auto loans, banking, and savings accounts. It is one of the largest banks

in the United States and has over 40,000 employees globally. The Bank has over 1,500 employees in New York City.

15.     At all times during her employment with Capital One, Ms. Tse was based in New York City.

16.     The Senior Business Manager, Treasury Management ("TM") Product Strategy & Analysis role at Capital One was sold to Ms. Tse as one where she would lead a team to perform strategic product portfolio assessment and pricing strategy.

17.     Ms. Tse's predecessor David D'Angelo ("D'Angelo")(White male) had been very technical (with SQL knowledge) but the Bank told her they were looking for a different profile. The Bank pitched that D'Angelo had not been as big picture in his experience level and hence they were keen to hire her. Ms. Tse also told Esen Dogan ("Dogan") that she wanted to join to work for him. Specifically, she said she was more interested in his team (product and deposit strategy) as it aligned better with her background as opposed to Khatri's team (sales analytics), which was more data and reporting driven.

18.     Early on, Ms. Tse expressed surprise that she would be a Senior Manager instead of Director given her years of experience at other financial institutions in similar roles.  Additionally, the Bank had given her the impression that she was more big picture and experienced than the White male predecessor D'Angelo, but yet only brought her in as a Senior Manager, which was under his Director title.

19.     In a short time, Ms. Tse's contributions at the Bank included:

- Strategizing commercial-wide repricing events using industry benchmark pricing and internal standard pricing, in collaboration with product and sales to advise on and implement client level changes across treasury management products, earning $3.5M in gross fees for the Bank
- Defining intent and executed repricing of 300+ clients to encourage move away from branches, contributing $1.5M in revenue and $1M in cost savings

4

- Reframing and pushing forward an investment case for integrated receivables (IR), including a customer pain-point analysis, a cost-benefit analysis on which IR components are most critical and which products to include with IR first – the product has since been approved and is being implemented, after being in limbo for some years
- Completing pricing and volume analysis for Express Deposit and multi-client Safebank. Express Deposit (client mailing in cash) is now active and used as an alternative for branches
- ACH third party sender analysis: assessing ACH transfers with deposit movement correlation and initial recommendation not to exit the product (potential loss of $20M if clients exited the Bank), working with data analysts to make client profitability available on Teradata, managing revenue: 2018 revenue targets, EY Cash Management survey, monthly revenue reports and product-level revenue analysis, onboarding analysis: quantified revenue lost from delayed client onboarding

20.    Her significant accomplishments also included:

- Creating and executing a treasury management strategy for Government Banking presented to the Head of Commercial Bank – results led to clarified strike zone, pricing and approach to win and retain business
- Crafting branchless banking strategy incorporating Government Banking client empathy interviews, and explored new product: insured cash sweep, which has since been put on hold because of Fed rate declines
- Initiating a business case to eliminate 10% reserve requirements for clients in late 2019 – clients started receiving earnings credit on 100% of their balances
- Presenting to leadership an analysis of blended checking products, the key findings of which were that the Bank were overpaying clients on the rate paid and $1B of new money coming in was not enough to cover the gap leading to a $5M net loss. Clients are now being repriced for optimal profitability
- Completing Phase I of treasury management client strike zone articulation across lines of businesses, along with key product gaps and guardrails, and key client complaints
- Municipal finance referrals, Core Middle Market client concentration, Treasury Management strategy (listing with Corp strategy and working on right to win), product focus days – data and analytical support for platform managers (support role), heavy branch cash users analysis, analysis of potentially zero pricing Treasury Management products

21.    Ms. Tse creatively and skillfully came up with the XAA pricing tool that was adopted from the Loan Validation tool. This creation was a success and repeatedly implemented. She has good relationships with platform/product managers and salespeople.

22.     Ms. Tse recruited Rishil Savani and Amy Ruan ("Ruan"), who are successful at the Bank. She has been very active in community engagement.

23.     Between December 2017 and June 2018, Ms. Tse reported to Dogan successfully.  At the time, Dogan did not have children and neither did Ms. Tse nor her colleagues, Teerna Choudhury ("Choudhury") and Abhishek Saxena.  Dogan ultimately relocated to the West Coast.

24.     Ms. Tse performed very promising work during her time with Dogan.  For a brief period, she reported to Phil Beck ("Beck"), who was the Head of TM.  Then she and Choudhury were transferred to Defendant Khatri, while Ms. Tse's male colleagues were transferred to Nancy Robinson and Trish Herskovitz (and to date these male colleagues seem to all be performing well and their jobs are not at risk).

25.      In the time that Ms. Tse reported to Defendant Khatri, she experienced many discriminatory experiences that continued even after Khatri left.  Khatri showed clear preference for the male employees Fouad Alkisswani ("Alkisswani") and Andrew Marchese ("Marchese") (and they continued to be preferred after Khatri left).

26.     Ms. Tse was placed in Government Banking and Core Middle Market with the smallest clients that Alkisswani and Marchese did not want.  Marchese handled deposits, which is very important to the Bank, and Alkisswani worked on Specialties.  The unwanted work went to Ms. Tse and Riya Sarkar ("Sarkar")(another minority female employee).  Ms. Tse was micromanaged by Defendant Khatri while Alkisswani and Marchese had a lot of leeway with their work.

27.     Defendant Khatri was very distant and cold to Sarkar and Ms. Tse, both Asian females. Sarkar is a young Indian foreign national who emigrated from India in 2013 (and hence on H-1B visa) and speaks with an accent.  Both Sarkar and Ms. Tse were ultimately put on performance plans and asked to leave the Bank (and Ms. Tse is currently there only because she hired counsel

to intervene).  Sarkar's performance improvement plan was based on her handling of a subordinate in short time rather than her actual substantive performance.  She was given essentially no training as an employee working in a different office and thrown into projects.  Similarly, Ms. Tse was doing product strategy across lines of businesses before but Khatri put her in Government Banking and Core Middle Market.  Ms. Tse's key partners changed and she worked on large vertical teams. Like the other Asian employee from India, Ms. Tse was given no coaching, direction or initial meetings to acclimate to the work but was just thrown in without guidance.

28.     In December 2018, Ms. Tse informed Defendant Khatri that she was pregnant with twins. Khatri assumed it was IVF, which was off-putting as it made assumptions about Ms. Tse's age and fertility, and was generally inappropriate.  It also separated her from Khatri once Ms. Tse told her that she did not become pregnant through IVF.  Ms. Tse did actually become pregnant through IVF but had not expected to be asked about it by her boss and so, when put on the spot not knowing what to do, answered no in a panic.  Although Khatri did not immediately retaliate in the 2018 year-end review, she began to add discriminatory language then, like Ms. Tse was lacking "some focus" (due to her stereotype of a pregnant woman).  Khatri also started to pressure Ms. Tse about her SQL skills even though she was hired without it and this was an issue specifically discussed in the interview as not being part of her career.

29.     Defendant Khatri asked Ms. Tse whether she had hired Ruan because they are "***friends***". There was no basis for that assumption, as Ms. Tse had met Ruan at the Bank, except that they are both women of Chinese-American descent.  This statement was racially offensive both to Ms. Tse and to Ruan and an insult to their positive performance contributions regardless of their race.

30.     It was very clear that Defendant Khatri intended to manage Ms. Tse out of the Bank after the announcement of her pregnancy.  Alkisswani was given preferential projects like Specialties

while Ms. Tse  worked on the undesired GB project with no opportunity for advancement.  In group meetings where Sarkar participated on the phone from Virginia, Khatri would put her on mute and exchange nasty looks with Alkisswani, making fun of Sarkar.  It appeared that they were not discussing the substance but that they could not understand her or felt that she was strange (because she speaks with a heavy Indian accent). They were also not sensitive and respectful, accusing Sarkar of discussing things that seemed obvious without considering the cultural differences and the fact they never trained her.

31.     Defendant Khatri never micromanaged the males on her team as much as she did Sarkar and Ms. Tse.  For instance, Sarkar and Ms. Tse would personally have to reach out to salespeople and manually fill out a weekly deposits movement Google Sheet while male employees were able to get their direct reports to do it.  Sometimes male employees, like Marchese, did not have to do it at all.  Khatri compared Ms. Tse to Ilya Rabich ("Rabich"), who was less experienced than her and a White male, but he was hired to be the "numbers" guy whereas Ms. Tse was hired for the big picture (allegedly).

32.     In Ms. Tse's third trimester of pregnancy in spring 2019, Defendant Khatri criticized her performance and demoted her from Senior Business Manager to Business Manager, even against Alkisswani and Beck's advice.  Many in the group found this shocking.  With Human Resources present in the April 2019 meeting, Ms. Tse asked whether this was because of her pregnancy.  The claim was never properly investigated.  ***After only 6 months reporting to Khatri and becoming pregnant shortly after being assigned to her, and where Ms. Tse was doing something totally different that she was not hired to do, Khatri demoted Ms. Tse to pressure her to resign after having the babies***.

33.     Sarkar (Indian foreign national), Magdalena Dias (Defendant Khatri's Black female assistant) and Ms. Tse (Asian) all received bad feedback from Khatri that year.  This was all reported to Brenda Talley in Human Resources and later through Ms. Tse's counsel.

34.     Ultimately, Defendant Khatri was let go but the demotion/negative impact to Ms. Tse persisted.  When Defendant Lindenmann became Ms. Tse's new manager, he verbally said he would reverse the demotion but continued to confirm the negative discriminatory and retaliatory reviews set in motion by Khatri.  Also, given the move of Alkisswani to report to Lindenmann and Marchese moving to report to Beck, it would have been a natural time to promote Ms. Tse to head of TM product strategy, but the Bank decided to keep this an open position rather than have Ms. Tse report to Lindenmann (as a very pregnant Asian woman was not the profile they wanted for that seniority).

35.     From May 2019, Ms. Tse reported to Defendant Lindenmann, who continued to prefer Alkisswani and other male members of this team (Rabich and Tim McKeever) and women who did not have children (Choudhury).  Lindenmann assigned Ms. Tse a generic product catch all with Sarkar and did not give her projects designed to develop her and keep an ongoing role when she returned from maternity leave.  Lindenmann's entire team is able to work late as they are not new mothers (and there is no one who was a primary caregiver or with a disability on his team).

36.     On June 10, 2019, Ms. Tse delivered twins by C-section and had preeclampsia.  ***Two weeks after she returned to work, Defendant Lindenmann put her on a coaching plan, on October 1, 2019.***

37.     Ms. Tse told Defendant Lindenmann that she needed accommodations to complete her work, as she needed to leave the Bank by 5:00-5:15 pm as a primary caregiver to her twin infants. She was pumping three times a day, which also presented difficulty as the nursing room often had

a man taking a nap inside.  Due to this, Ms. Tse suffered bouts of mastitis, which she had to embarrassingly disclose on October 28, 2019 to Lindenmann (who was already prejudiced against anyone with health conditions requiring accommodations or inability to work late).  On November 18, 2019, Ms. Tse's daughter was sick and throwing up and she needed an emergency appointment with the pediatrician.

38.     Defendant Lindemann has written admission emails at the end of 2019 that sexism complaints have been made about him.  Other witnesses have heard his racist and sexist comments.  For instance, Lindenmann has accused Ruan of being "quiet" at an initial meeting when Ruan is generally very talkative and bubbly.  As Ruan's previous manager, Ms. Tse analyzed that Ruan was simply intimidated because Lindenmann was aggressive, macho, intimidating and rude at the initial meeting, where he encouraged male employees Quan Nghiem ("Nghiem") and Alkisswani to speak up more, and made no eye contact with Ruan.  Lindenmann was not conscious at all that this "quiet" stereotype was often assigned to younger Asian women and very offensive.  He did not make Ruan feel safe at all in the initial meetings.

39.     The coaching plan again asked Ms. Tse to learn SQL, which is discriminatory and something she was not hired to do with Dogan.  She had to spend 80-90 hours, as a new mother, to work and also learn a programming language explicitly discussed at interview to be not required.  Defendant Lindenmann was using words to describe Ms. Tse as "scattershot", which is dangerously close to "scatterbrained" and another stereotype of new mothers.  If he felt Ms. Tse had a real health issue, he should have inquired whether she needed reasonable accommodation rather than judge her in a discriminatory way.  Despite these unfair, hostile and discriminatory accusations, Ms. Tse had positive feedback from two out of three key partners (Ruan and Eugene Waiters).

40.     In January 2020 to March 2020, Ms. Tse took the balance of her maternity leave, PTO and leave under the NY Paid Family Leave Act.  Her work and any productive opportunities were covered by White, male and/or single/without children employees.

41.     When Ms. Tse returned from the second part of her maternity leave on March 17, 2020, she worked with Sean McLean ("McLean") on the market strike zone and her role was diminished and more operational than strategic.  While McLean was a supportive manager, this shows again that Defendant Lindenmann was delegating her to another White male employee, as he was not comfortable managing Ms. Tse directly.  McLean reports to Alkisswani, who used to be Ms. Tse's equal, so this was the second demotion Ms. Tse suffered since announcement of her pregnancy.

42.     Ruan was promoted during this time reporting to McLean, but she could not be promoted previously when Ms. Tse and another Asian Manager, Nghiem, gave her good ratings. The feedback and leadership of Asian employees could not be taken seriously in this department.  A White male manager is the only person with authority in Ms. Tse's department.

43.     Ms. Tse was also not allowed in project leadership meetings where Alkisswani gets directives directly from Defendant Lindenmann, then Alkisswani updates McLean.  She only had weekly lunch and team virtual catch up meetings while everyone else had these as well as team meetings.  For instance, Ruan and Eunice Ju go to team meetings with Alkisswani and they have better communication and teamwork.  Lindenmann was not having the 30 minute meetings with Ms. Tse as per the cultural norm in Capital One.

44.     On April 13, 2020, a few weeks after Ms. Tse returned from a second leave, she was again told she had to either perform on the coaching plan/performance improvement plan or take an insignificant severance to leave the Bank.

45.    On May 12, 2020, Ms. Tse reported everything up to here to the Bank through counsel. She also requested the following reasonable accommodations under federal, state and city law to remediate the discrimination and hostile work environment and as a medical accommodation:

- That she be transferred away from Defendant Lindenmann
- That she is provided a Director level position in strategy and product management, corporate development or valuation
- Equal compensation to others at the Director level ($300,000 and up)
- That she stop work at 5:15 pm as primary caregiver to two kids with no nanny during the coronavirus pandemic
- That she work from home one time a week
- That any performance requirements are adjusted down by direct percentage to the number of days/hours she is in the office (or actively able to sign onto work), or alternatively providing more time to reach goals
- Longer time to complete assignments
- Keeping a reasonable workload – frequent check ins with supervisor (and potentially with HR) as to whether her workload is reasonable given her conditions
- Fewer/limited/targeted projects
- 2 weeks advance notice for travel
- No SQL requirements
- Remove PIP and coaching plans
- Employees to support her, including a manager and senior associate
- Continued interactive process and cooperative dialogue in her current and/or transitioned role to make sure any job description, expectations and/or goals are possible with her medical and primary caregiver circumstances
- Management coaching and guidance

46.    Ms. Tse provided a series of positions that she could be internally transferred to, which was ignored.

47.    On June 23, 2020, Beck, the head of Ms. Tse's group, made discriminatory comments about stepping on someone's throat in the wake of George Floyd's death.  He said this as a White male with a White male dominated group, and had to send an apology email the next day. As Beck is Defendant Lindemann's manager, this shows the hostility of his group towards minorities and the insensitivity towards the struggles of Black/Asian employees and human beings during the coronavirus pandemic when hate crimes have spiked.

48.     On June 24, 2020 Ms. Tse had a call with Sedgwick, who was handling the reasonable accommodation process (even after Ms. Tse's counsel told Capital One many of the accommodations had to be considered by the Bank directly).  Sedgwick also mentioned many of the requests were more appropriate for employee relations.

49.     On July 6, 2020, while on a call with McLean and James Tucker ("Tucker")(Director of Sales Enablement, and another White male close with and hired by Beck), Tucker asked Ms. Tse, "***Jeannice, will you be sending out the invite?***" for a follow up call he had requested and had questions for Ms. Tse.  Noting how sexist this was and recognizing that she made previous complaints, McLean immediately stepped in to say he would set it up.  Ms. Tse later appreciated McLean stepping in like that and said that he is setting a great example as a soon to be father against toxic masculinity in the workplace.  However, one person cannot change the culture of the group and in any case, McLean recently left the Bank.

50.     On July 9, 2020, Ms. Tse was informed that only two accommodations would be made: 1) work from home once a week (which is less than what all other employees have since all employees are all working from home due to COVID-19), and 2) two weeks' notice of any travel (no one traveling at this time).  Ms. Tse was not transferred away from the perpetrators of discrimination for legal or medical reasons, she was not given a modified work load or schedule, her coaching/performance plan was not withdrawn, and she was not offered management coaching to advance.

51.     In fact, Capital One reiterated that Ms. Tse needed to perform on the pretextual and discriminatory coaching plan, which means they wanted to manage her out (or for Ms. Tse to volunteer to leave with a very low and unreasonable severance for what she experienced).

52.     McLean left the Bank on July 10, 2020.  75-80% of Ms. Tse's projects were with him and she was again getting very little direction from a new manager.  It is clear that she is an "HR problem" and the Bank is just hoping she leaves.

53.     On July 24, 2020, Alkisswani and Defendant Lindenmann spent less than 10 minutes going over the coaching/mid-year review with Ms. Tse.  They had thrown her a project having almost nothing to do with her regular work to use it to say she is not capable as a manager.  Meanwhile, knowing this would happen, Ms. Tse had preemptively asked for the accommodation of management training, which was refused.

54.     After this time, it became clear that Capital One would not be resolving the matter with Ms. Tse either by way of remediating the discriminatory and retaliatory actions to provide a meaningful way for Ms. Tse to succeed in her position (or another position) at Capital One, or offering any severance for an amicable separation taking into consideration her legitimate claims.  Hence Ms. Tse requested a right to sue from the EEOC on or about August 13, 2020.  The EEOC issued the right to sue shortly on or about August 19, 2020.

55.     In anticipation of litigation, Capital One continues the retaliatory actions and pre-textual reviews, and Defendant Lindenmann continues superficial meetings with Ms. Tse.   He tries to criticize Ms. Tse's work from every angle but Ms. Tse is confident that discovery will reveal that none of these efforts have anything to do with the substance of her work.   Lindemann flips from criticizing that her work is too specific and doesn't present the "big picture" (mostly because he doesn't want to read the work or understand the substance, and at one point was on a two week vacation during a critical portion of Ms. Tse's PIP/coaching plan) to saying slides were not done correctly (i.e., a PowerPoint preference, even though at all times Ms. Tse submits to Lindenmann

– in advance of meetings – the work, which he avoids reviewing beforehand but bombards her with criticism afterwards).

56.     Defendant Lindenmann fluctuates between being unwilling to give clear written instructions (Ms. Tse had asked for that to start a paper trail, to avoid changing standards after the fact) to then writing pretextual criticisms to not provide Ms. Tse any meaningful chance to continue her employment successfully.  He still makes criticisms of her "communication" although Ms. Tse communicates very clearly in writing and on the phone; therefore this can again only be a reference to her accent and race/ethnicity.

57.     Defendant Lindenmann, knowing the substance of the internal complaints and EEOC Charge against him, also now uses, in a most insulting way, the word "anxiety" in conversations, knowing that Ms. Tse had due to his treatment developed conditions, documented by medical records.

58.     Due to this continued abuse and purposeful infliction of distress, Ms. Tse underwent breast lesion surgery that she was informed may not have been necessary absent work stress, and also needed disability leave from September 22, 2020 to October 19, 2020.

59.     Immediately after Ms. Tse's return (within 1 business day), she continued to experience subjective and abusive treatment from her supervisor and heightened twisting of her words.

60.     Ms. Tse also submitted a second reasonable accommodation request concerning new developments which Defendants admitted was not being evaluated from the perspective of New York City Human Rights Law, which provides more expansive protection to employees in this situation.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Race, Sex, and Pregnancy Discrimination and Hostile Work Environment**
**in Violation of Title VII**
**(Against Defendant Capital One)**

61.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

62.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of Defendant Capital One.

63.     Capital One was and is Plaintiff's "employer" within the meaning of Title VII.

64.     Plaintiff was and is a female, Asian, "employee" of Capital One and is a member of protected classes within the meaning of Title VII.

65.     At all times, the Company was aware of Plaintiff's race and sex, and since December 2018, of her pregnancy.

66.     By the conduct alleged in this Complaint, Capital One discriminated against, and continues to discriminate against, Plaintiff with respect to the compensation, terms, conditions and privileges of her employment because of her race, sex, and pregnancy.

67.     Plaintiff was subjected to a pervasive hostile work environment by the Defendant's conduct, and Defendant's unlawful conduct in violation of Title VII is continuing.

68.     The Company engaged in, and continues to engage in, unlawful employment practices prohibited by Title VII because of Plaintiff's race, sex, and pregnancy in the manner described in the Statement of Facts.

69.      Plaintiff suffered, and continues to suffer, adverse employment actions and continuing damage by the Defendant due to her race, sex, and pregnancy and the  hostile work environment

that Plaintiff suffered and continues to suffer at Capital One because of her race, sex and pregnancy.

70.     As a direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income and damage to reputation.  Plaintiff has also suffered and/or will suffer future pecuniary losses, attorney's fees and costs, emotional and physical pain and suffering, inconvenience and other non-pecuniary losses.

71.     As a further direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other things, impairment and damage to her good name and reputation, emotional distress, physical injury, mental anguish and lasting embarrassment and humiliation.

72.     Plaintiff is entitled to recover, inter alia, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Capital One under Title VII.

### SECOND CAUSE OF ACTION
### Disability Discrimination in Violation of
### the Americans with Disabilities Act
### (Against Defendant Capital One)

73.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

74.     At all relevant times, Plaintiff was an "employee" of Capital One under the ADA, 42 U.S.C. § 12111(4).

75.     Defendant Capital One is an "employer" under the ADA, 42 U.S.C. § 12111(5).

76.     Defendant Capital One violated the ADA by discriminating against Plaintiff based on her disabilities in connection with employment determinations including, inter alia, pay, promotion, job assignments, training, leave, benefits, and other employment related activities.

77.     Plaintiff suffers from protected disabilities under the ADA, including pregnancy, which she made known to her employer Capital One.

78.     Plaintiff's disability was used by the Company, and continues to be used by the Company, wrongfully and without basis to deny Plaintiff the pay, privileges, and other benefits to which she was and is rightfully entitled by, inter alia, limiting, segregating, or classifying Plaintiff in a way that adversely affects the opportunities or status of Plaintiff because of her disability.

79.     In fact, the Company utilized Plaintiff's disability and/or perceived disability to torture her and make her uncomfortable and in ways that were detrimental to her health and safety until she was forced to take time off, further limiting her career.

80.     The Company's discrimination against Plaintiff based on her disability and/or perceived disability was intentional and willful.

81.     By reason of the foregoing, Plaintiff is entitled to recover, inter alia, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Capital One.

**THIRD CAUSE OF ACTION**
**Race, Sex, Familial Status, and Pregnancy Discrimination and Hostile Work Environment**
**in Violation of NYSHRL**
**(Against All Defendants)**

82.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

83.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

84.     At all relevant times, the Company was and is Plaintiff's "employer" within the meaning of the NYSHRL.

85.    At all relevant times, Plaintiff was and is an "employee" of Capital One within the meaning of the NYSHRL.

86.    At all times, Defendants were aware of Plaintiff's race, sex, and familial status and since December 2018, of her pregnancy.

87.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's race, sex, familial status, and pregnancy in the manner described in the Statement of Facts.

88.    Plaintiff is severely limited in her career by Defendants' unlawful conduct due to her race, sex, familial status, and pregnancy.

89.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, sex, familial status, and pregnancy as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

90.    Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

91.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

92.    Plaintiff's damages include, inter alia, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

93.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

**FOURTH CAUSE OF ACTION**
**Race, Sex, Pregnancy, and Caregiver Status Discrimination and Hostile Work Environment**
**in Violation of NYCHRL**
**(Against All Defendants)**

94.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

95.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

96.     At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

97.     At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

98.     At all times, Defendants were aware of Plaintiff's race, sex, caregiver status, and since December 2018, of her pregnancy.

99.     Defendants engaged in, and continue to engage in, unlawful employment practices prohibited by NYCHRL because of Plaintiff's race, sex, pregnancy, and caregiver status in the manner described in the Statement of Facts.

100.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

101.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination and a hostile work environment.

102.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

103.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

104.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

105.    Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Reasonable Accommodation**
**in Violation of the ADA (Against Defendant Capital One)**
**and the NYSHRL and NYCHRL**
**(Against All Defendants)**

106.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

107.    The ADA, NYSHRL and NYCHRL require Defendants to engage in a mandatory interactive process and cooperative dialogue to identify a reasonable accommodation for an employee with disabilities such as Plaintiff, but Defendants failed to do so for Plaintiff.

108.    Defendants failed to provide simple reasonable accommodations that would require little to no business burden for Defendants for Plaintiff's disabilities, by refusing to engage in any meaningful mandatory interactive process and cooperative dialogue in good faith to provide simple specific reasonable accommodations she requested through a medical professional for her disabilities.

109.    As such, Defendants have violated the ADA, NYSHRL and NYCHRL.

110.    Additionally, Defendants failed to engage in a meaningful cooperative dialogue with Plaintiff after obtaining multiple verbal, written and medical notices of Plaintiff's medical need to have previous discriminatory/retaliatory reviews removed from her file, effectuate a transfer of supervisors, and have goals adjusted and provide other reasonable accommodations as alleged in the Statement of Facts, and failed to provide a credible written explanation as to why these accommodations are not possible for a company the size of Defendant Capital One and for the experience and role Plaintiff has.

111.    As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress, all in amounts to be determined at trial.

112.    Defendants' discriminatory conduct was willful and in reckless disregard of Plaintiff's protected rights.  As such, Plaintiff is entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**Discrimination and Retaliation**
**in Violation of the FMLA and NY Paid Family Leave Law**
**(Against All Defendants)**

113.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

114.    At all times relevant herein, Plaintiff was and is an "eligible employee" within the meaning of the FMLA.  Plaintiff is a full-time employee of Capital One and at all relevant times worked at least 1,250 hours in any 12 month period.  Plaintiff is also a covered employee under the meaning of the New York Paid Family Leave Law, 12 N.Y.C.R.R. § 355 *et seq.*

115.    At all times relevant herein, Defendant Capital One was and is a "covered employer" within the meaning of the FMLA.  Capital One employs 50 or more employees in at least 20 calendar weeks within a 75 mile radius of the Company.  Capital One is also an employer with obligations under the New York Paid Family Leave Law, 12 N.Y.C.R.R. § 355 *et seq.*

116.    At all times relevant herein, Defendant Khatri and Defendant Lindenmann were and are a "covered employer" within the meaning of the FMLA.  Khatri and Lindenmann possessed the power to control Plaintiff's employment, had the power to hire and fire employees, supervised or controlled employee work schedules or conditions of employment, determined the rate and method of payment, and maintained employment records.  Khatri and Lindenmann were and are also employers under the meaning of the New York Paid Family Leave Law, 12 N.Y.C.R.R. § 355 *et seq.*

117.    By the actions described in the Statement of Material Facts, among others, Defendants violated the FMLA and NY Paid Family Leave Law by unlawfully interfering with, restraining or denying the exercise of Plaintiff's rights, *inter alia*, terminating any meaningful opportunity to continue employment shortly after Plaintiff announced her pregnancy and need for time off, and putting Plaintiff on a coaching plan shortly after return from maternity leave, actions that would

clearly deter employees from exercising their rights under the FMLA and New York Paid Family Leave Law.

118.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA and NY Paid Family Leave Law, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorney's fees and expenses.

**SEVENTH CAUSE OF ACTION**
**Pay Discrimination**
**in Violation of the EPA**
**(Against All Defendants)**

119.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

120.     At all times relevant herein, Plaintiff was and is a "Person" as defined under 29 U.S.C. § 203(a).

121.     At all times relevant herein, Plaintiff was and is an "Employee" as defined under 29 U.S.C. § 203(e)(1).

122.     At all times relevant herein, Defendant Capital One was and is an "Employer" as defined under 29 U.S.C. § 203(d).

123.     At all times relevant herein, Defendant Khatri and Defendant Lindenmann were and are "Employers" as defined under 29 U.S.C. § 203(d).  Khatri and Lindenmann had operational control over Plaintiff's employment at Defendant Capital One, controlled significant functions of the business with respect to Plaintiff's employment, and determined salaries, hiring decisions, performance evaluations and other terms and conditions relevant to Plaintiff and her peers.

124.     Defendants discriminated against Plaintiff within the meaning of the Equal Pay Act by providing her with lower pay and other less favorable terms and conditions of employment than

similarly situated male colleagues on the basis of her sex even though Plaintiff performed equal and/or more work requiring equal and/or more skill, effort, and responsibility as her similarly situated male counterparts.

125.    Plaintiff and similarly situated male colleagues all performed equal job duties and functions.

126.    Plaintiff and similarly situated male colleagues all performed equal work that required equal skill, effort and responsibility, and that was performed under similar working conditions.

127.    Defendants discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denial of raises and bonuses and other compensation, discriminatory denial of promotions and/or titles, and other forms of discrimination in compensation in violation of the Equal Pay Act.

128.    The differential in pay between Plaintiff and her male colleagues was not due to seniority, merit, quantity or quality of production, or a factor other than sex.  Rather, the differential in pay was due to Plaintiff's sex.

129.    Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender in violation of the Equal Pay Act.

130.    Defendants' actions were not done in good faith nor did they have any reasonable grounds for believing that their acts or omissions were not a violation of the Fair Labor Standards Act.

131.    As a result, Plaintiff is entitled to liquidated damages.

132.    Defendants' foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a).

133.    As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and lost earning capacity and loss of confidence.

134.    Plaintiff is entitled to recover monetary damages and other damages and relief under 29

U.S.C. § 206(d) *et seq.* and 29 U.S.C. §255(a) *et seq.*

## EIGHTH CAUSE OF ACTION
### Violation of the New York State Labor Law § 194
### (Against all Defendants)

135.    Plaintiff hereby realleges and incorporates each and every allegation contained in this

Complaint with the same force as though separately alleged herein.

136.    Plaintiff is an "employee" of Capital One as defined under N.Y. Lab. Law § 190(2).

137.    Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

138.    Defendants knowingly, willfully and intentionally paid, and continue to pay, Plaintiff less

than her co-workers performing substantially similar work due to Plaintiff's sex and pregnancy.

139.    Defendants' disparate treatment of Plaintiff with respect to her compensation is not based

on any legally-recognized differential or bona fide factor, but rather is based on Plaintiff's status

in protected classes.

140.    The facts supporting unequal pay and terms and conditions of employment are further

outlined in the Statement of Facts.

141.    As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff

is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her

reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three

hundred percent of the total amount of the wages due for Defendants' willful violation.

## NINTH CAUSE OF ACTION
### Retaliation in Violation of
### Title VII and the ADA (Against Defendant Capital One) and the
### NYSHRL and NYCHRL
### (Against Defendants Capital One and Lindenmann)

142.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

143.     Defendant Capital One violated Title VII and the ADA, and Defendants Capital One and Lindenmann violated the NYSHRL and NYCHRL, because they knowingly retaliated, and continue to knowingly retaliate, against Plaintiff for objecting to the discrimination at Capital One, requesting reasonable accommodations for her disabilities and familial status, hiring employment counsel to report her claims, and filing an EEOC Charge as alleged in the Statement of Facts above.

144.     Defendants Capital One and Lindenmann were aware that Plaintiff engaged in the protected activities alleged above.

145.     Because of her protected activities, Defendants Capital One and Lindenmann took retaliatory adverse employment actions against Plaintiff as alleged in the Statement of Facts above.

146.     The unlawful retaliation against Plaintiff by Defendants Capital One and Lindenmann was done with malice and reckless indifference to Plaintiff's protected rights.

147.     As a direct and proximate result of the unlawful retaliation by Defendants Capital One and Lindenmann, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

## JURY DEMAND

148.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands a judgment against Defendants as follows:

A.     Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated:  (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; (ii) Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101 et seq.; (iii) the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; (iv) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; (v) Equal Pay Act of 1963, 29 U.S.C. § 206(d) et seq.; (vi) New York Labor Law §194; (vii) Family and Medical Leave Act, 29 US.C. §2601 et seq.; and (viii) New York Paid Family Leave Law, 12 N.Y.C.R.R. § 355 et seq., and (ix) that Defendants' foregoing acts of discrimination, harassment and retaliation against Plaintiff were intentional and willful.

B.     Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C.     Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest (and adjusted to make Plaintiff whole for any increased tax liability incurred by her receipt of a lump sum payment in a single year);

D.     Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E.     Award the Plaintiff punitive damages;

F.     Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.

Dated: New York, New York
         November 7, 2020

Respectfully submitted,

By: _____
         Tiffany Ma, Esq.
         Young & Ma LLP
         575 Lexington Avenue, 4th Floor
         New York, NY 10022
         T: (212) 971-9773
         F: (212) 600-2301
         tma@youngandma.com